UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:10-CR-24 |
| | ) | (VARLAN/SHIRLEY) |
| BEVERLY STOKELY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This criminal action is before the Court on the Report and Recommendation (the "R&R") [Doc. 27], issued on June 17, 2010 by United States Magistrate Judge C. Clifford Shirley, Jr. Defendant Beverly Stokely is charged in the single-count indictment in this case [Doc. 1] with being a felon in possession of a firearm on September 10, 2009, in violation of 18 U.S.C. § 922(g)(1).

On March 29, 2010, defendant filed a Motion to Suppress Evidence and Memorandum in Support (the "motion to suppress") [Doc. 14], arguing that the search of her residence by law enforcement officers violated the Fourth Amendment because the searching officers did not have a search warrant, no exigent circumstances existed, defendant refused consent to the search, and defendant's husband did not voluntarily give his consent to the search. On April 12, 2010, the United States filed a response in opposition [Doc. 15], arguing that the officers searched defendant's residence pursuant to a valid, voluntary consent to search by

defendant's husband and that, even if the Court finds defendant's husband's consent to be invalid, application of the exclusionary rule is unwarranted.

On April 28, 2010, Magistrate Judge Shirley held an evidentiary hearing on the pending motion [*see* Doc. 16]. Following the presentation of testimony and evidence, Judge Shirley permitted the parties to file supplemental briefs on an officer's authority to handcuff a resident upon his arrival, prior to the search of the residence, and pursuant to the resident's alleged consent. Both parties filed supplemental briefs [Docs. 20, 21] and the government filed a reply brief [Doc. 23].

On June 17, 2010, Magistrate Judge Shirley issued the R&R finding that the warrantless search of defendant's residence violated the Fourth Amendment because the officers did not have valid consent because defendant's husband, Mr. Toby Stokely ("Mr. Stokely"), was illegally detained and his illegal detention vitiated his subsequent consent. Accordingly, Judge Shirley recommended that defendant's motion to suppress [Doc. 14] be granted.

On July 1, 2010, the government filed objections to the R&R [Doc. 29], requesting that this Court receive additional evidence to clarify certain factual inaccuracies for proper application to the law pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, or, alternatively, recommit the matter to the magistrate judge. The government also requests that the Court reject in part the portion of the R&R that recommends suppression of evidence and deny defendant's motion to suppress as a whole.

Defendant has not responded to the government's objections. This matter is now before the Court on the government's objections.

## I.      Relevant Facts[1]

The findings of fact of the magistrate judge are as follows:

On September 10, 2009, Detective Krystal Gibson ("Detective Gibson") of the Knox County Sheriff's Office (the "KCSO") went to defendant's residence to arrest defendant for the December 2008 armed robbery of the Holiday Inn in Dandridge, Tennessee. No one was at the residence, so Detective Gibson went to lunch. While having lunch, she received word that defendant had been stopped. Defendant was pulled over at a Family Dollar store by two local law enforcement patrol cars and ordered out of her car and arrested pursuant to an arrest warrant. Special Agent Rebecca Bobich ("Agent Bobich"), with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (the "ATF"), arrived at the scene of defendant's arrest shortly thereafter. At some point after defendant's arrest and while she was detained in a police car, KCSO Detectives Matt Sexton ("Detective Sexton") and Walt Schmidt ("Detective Schmidt") asked defendant to give consent to search her residence. Defendant did not give consent but deferred to her husband, Mr. Stokely. Detective Schmidt tried to call Mr. Stokely but could not reach him. Although the detectives tried to get defendant to

---

[1] The testimony and relevant exhibits from the evidentiary hearing on April 28, 2010 are thoroughly summarized in the R&R [*see* Doc. 27]. To the extent the government has objected to the magistrate judge's summary of the testimony or his findings of fact, the Court has noted and considered such objections herein.

make a decision about granting consent to search her residence, she continued to defer to her husband.

Approximately forty minutes after defendant was stopped, Agent Bobich reviewed her *Miranda* rights, using a rights waiver form. Defendant agreed that she understood her rights and waived them, signing the rights waiver form. Ten minutes before signing the rights waiver form, but after defendant had received oral advice of her *Miranda* rights, defendant signed a consent form, agreeing to permit the officers to search her car. While at the scene of her arrest, defendant told Agent Bobich that she kept a twelve gauge shotgun under her bed at her residence. Agent Bobich asked defendant if she would consent to the search of her residence, but she deferred to her husband, Mr. Stokely. Defendant gave Agent Bobich Mr. Stokely's cellular telephone number but warned the agent that he would not answer a call from a number that he did not know. At 1:56 P.M., Agent Bobich called Mr. Stokely and left a message that his wife was in custody and that he needed to call Agent Bobich. Shortly after 2:00 P.M., Mr. Stokely returned Agent Bobich's call. She told him that his wife was in custody and asked if he would meet her at his residence. Mr. Stokely agreed.

After hearing that defendant had been stopped, Detective Gibson returned to defendant's residence to await Mr. Stokely's arrival. When Mr. Stokely arrived around 2:10 P.M., Detective Gibson called for backup. She then approached Mr. Stokely and handcuffed him for what she testified was her "safety." About five minutes later, another officer, Officer Scalf, arrived at the residence, and Detective Gibson moved Mr. Stokely's handcuffs to the

4

front and placed him in double cuffs. Detective Gibson and Officer Scalf stood in the driveway talking with Mr. Stokely, who was seated on the front porch. Mr. Stokely was permitted to smoke during this time.

About twenty minutes later, Agent Bobich, Investigator Glen Morrell ("Investigator Morrell"), and defendant arrived at the residence. Investigator Morrell waited in the car with defendant for about ten minutes before defendant was transported from the scene. Agent Bobich approached Mr. Stokely and was present when Detective Gibson reviewed the consent to search form with him. Mr. Stokely signed the consent form at 2:35 P.M. Agent Bobich and Detective Gibson performed a brief security sweep of the house and saw a marijuana plant and loose marijuana inside. A forensic unit and a narcotics unit were called to the scene and arrived approximately thirty to forty-five minutes later.

Investigator Veverly Hill ("Investigator Hill") of the narcotics unit got the consent form, which Mr. Stokely had already signed, and reviewed it with him again. Mr. Stokely, who was still handcuffed, accompanied the officers in the search of the house and was seated in the living room in a position to see into the master bedroom at the time that the firearms were seized. Investigator Morrell seized a twelve gauge shotgun from under the bed and a nine millimeter pistol from between the mattresses of the bed in the master bedroom. While Mr. Stokely was seated on the living room couch, Investigator Hill inventoried the marijuana and drug paraphernalia seized from the residence.

## II. Analysis

### A. Standard of Review

As required by 28 U.S.C. § 636(b)(1), the Court has undertaken a *de novo* review of those portions of the R&R to which the government has objected. In doing so, the Court has carefully considered Magistrate Judge Shirley's R&R [Doc. 27], the underlying and supporting briefs, the hearing transcript, the parties' supplemental briefs [Docs. 14, 15, 19, 20, 21, 26], and the government's objections [Doc. 29], all in light of the relevant law. For the reasons set forth herein, the Court will overrule the government's objections [Doc. 29], accept in whole the R&R [Doc. 27], and grant defendant's motion to suppress [Doc. 14].

### B. The R&R

The basis of defendant's motion to suppress evidence is two-fold, (1) that she never consented to the search of her residence, and (2) that the consent the officers allegedly obtained from Mr. Stokely was not voluntary. The government's objections to the R&R pertain to the issue of whether Mr. Stokely's consent to the search of the residence was valid and voluntary.

As to this issue, the magistrate judge found that Mr. Stokely was seized within the meaning of the Fourth Amendment when Detective Gibson placed him in handcuffs. Judge Shirley noted that at the time Detective Gibson seized Mr. Stokely at his residence, she had the following information: (1) Mr. Stokely lived at the residence, the same residence as defendant, and there was a warrant for defendant's arrest; (2) defendant was not at the residence but had been arrested at another location; (3) defendant had told her arresting

officers there was a firearm at the residence; (4) Mr. Stokely was on his way to the residence to meet law enforcement officers; (5) and Detective Gibson was to detain Mr. Stokely until the ATF arrived at the residence.[2] As to the specific facts Detective Gibson knew about Mr. Stokely at the time she arrived at the residence and placed him in handcuffs, Judge Shirley found that she knew:

> [T]hat (1) he was the Defendant's husband, (2) that he worked at the railroad, and (3) that he lived at the residence the officers wanted to search.

[Doc. 27, pp. 30-31 (numbers added)]. The magistrate judge then found that based on the totality of the circumstances and the information known by Detective Gibson, she did not have reasonable suspicion to detain Mr. Stokely because neither she nor any other officer possessed "specific and articulable facts" that Mr. Stokely was involved or about to be involved in criminal activity and that none of the facts they did possess "is remotely suggestive of criminal activity." [*Id.*, p. 31].

As part of this finding, Judge Shirley also considered the government's claim that Detective Gibson had knowledge of one other fact supporting her reasonable suspicion. Specifically, the government claims that upon Detective Gibson's arrival at the Stokely residence to await Mr. Stokely, she observed a marijuana plant in the backyard of the

---

[2] The magistrate judge noted that this last point is deduced from Mr. Stokely's testimony at the hearing, not Detective Gibson's testimony [Doc. 27, p. 30 n.2]. However, Judge Shirley found that because the government argued that this was a basis for finding both reasonable suspicion and good faith, "this fact [was] . . . generally consistent with the officers' testimony." [*Id.*]

residence and her knowledge of this plant was part of what established her reasonable suspicion to detain Mr. Stokely.

The magistrate judge, however, found this claim regarding the marijuana plant to be unsubstantiated for the following reasons:

First, Detective Gibson never mentioned seeing a marijuana plant in the backyard of the Stokely residence and when Detective Gibson was cross-examined by defense counsel about her actions while she awaited Mr. Stokely, she never mentioned the marijuana plant and she testified only that she waited in her car for Mr. Stokely to arrive. Second, Judge Shirley noted that the only evidence regarding when the marijuana plant was discovered was when Agent Bobich testified that Detective Gibson discovered it when she "first arrived at the house and, and [sic] was waiting[.]" [Doc. 27, p. 31]. Judge Shirley noted that this statement could mean the discovery of the plant occurred either before Detective Gibson approached Mr. Stokely and handcuffed him or after–while Detective Gibson was waiting for Agent Bobich.

Judge Shirley also noted that Investigator Morrell testified that after defendant was transported from the residence, he helped to secure the area around the house and he too did not testify about any marijuana plant. Next, Judge Shirley noted that there was no evidence of any discussion of a marijuana plant between Detective Gibson, Officer Scalf, and Mr. Stokely as they awaited Agent Bobich, defendant, and the other officers, and the topic of their conversation was limited to casual conversation. Finally, the magistrate judge noted that the narcotics unit was only called to the residence after the security sweep of the house.

8

After observing that the government bears the burden of proving Mr. Stokely's valid consent, Judge Shirley found that based on the absence of evidence regarding the marijuana plant, the government did not meet its burden of proving that the plant was part of any reasonable suspicion Detective Gibson had to detain Mr. Stokely.

Having found the detention of Mr. Stokely to be unconstitutional in its inception due to lack of reasonable suspicion, the magistrate judge then inquired whether the intrusiveness of the stop was reasonably related to the situation by reviewing the reasonableness of Detective Gibson's actions in the context of the circumstances at the time of the detention [Doc. 27, p. 33]. Judge Shirley noted the government's contention that Detective Gibson reasonably handcuffed Mr. Stokely for her own safety, given that Detective Gibson was aware that there were guns at the residence and her knowledge that the police were investigating an armed robbery by defendant [*Id.*].[3] The magistrate judge noted that Mr. Stokely was larger than Detective Gibson but found that, beyond this, "nothing in the evidence suggests that [Mr. Stokely] was either armed or dangerous[,]" and the size disparity issue evaporated once the second officer, Officer Scalf, arrived at the residence five minutes after Detective Gibson placed Mr. Stokely in handcuffs [*Id.*, pp. 34-35]. Judge Shirley also found that the twenty-five minutes in which Mr. Stokely remained in handcuffs was time not

---

[3] The magistrate judge noted that the government also argued that the presence of the marijuana plant at the residence supported Detective Gibson's reasonable detention of Mr. Stokely given the circumstances [Doc. 27, p. 33 n.5]. However, in light of Judge Shirley's prior determination that there was an absence of evidence regarding Detective Gibson's knowledge of the marijuana plant at the time she handcuffed Mr. Stokely, the magistrate judge found that this assertion did not support the government's argument that Mr. Stokely's detention was reasonable.

9

reasonably related to the circumstances and the officers did not spend this time finding evidence to confirm or dispel any reasonable suspicions Detective Gibson may have had about Mr. Stokely. Accordingly, Judge Shirley found that the illegal detention of Mr. Stokely was "tantamount to an arrest without probable cause[]" [*Id.*, p. 36], nothing occurred between Mr. Stokely's initial illegal seizure and his consent save for the same unconstitutional conduct, nothing occurred to dissipate the taint of the initial seizure, and thus, any subsequent consent given by Mr. Stokely to search the residence was vitiated.

Notwithstanding his prior determination that Mr. Stokely's detention was illegal and vitiated his subsequent consent, Judge Shirley also found that Mr. Stokely was subjected to unjustified physical force and that he experienced "more subtle forms of coercion" that were so coercive that he could not have voluntarily consented to the search [Doc. 27, pp. 41-42]. The magistrate judge found the following to be evidence of subtle forms of coercion: that Mr. Stokely's son, whom Investigator Hill testified was a "young boy," was placed in handcuffs; the number of officers that were present at the time Mr. Stokely signed the consent form (even though Mr. Stokely testified that he was not intimated by the officers); that Mr. Stokely did not receive *Miranda* warnings but was notified by the consent-to-search form that the fruits of the search could be used as evidence; and the lack of evidence showing that Mr. Stokely was experienced with the criminal justice system [*Id.*, p. 42].

The magistrate judge also rejected the government's argument that even if the Court determined that the officers did not have valid consent, the exclusionary rule should not be applied to the results gleaned from the search because Detective Gibson had a good-faith

belief that she had reasonable suspicion to detain Mr. Stokely. Judge Shirley disagreed, finding that Detective Gibson's decision to detain Mr. Stokely was based on her own erroneous assessment that the detention was necessary and legal and thus, not the type of Fourth Amendment violation that could be deterred by exclusion of the evidence.

### C. The Government's Objections

The government makes three objections to the R&R. First, the government argues that Detective Gibson had reasonable suspicion to detain Mr. Stokely because a totality of the circumstances supports a finding of objective reasonable suspicion that criminal activity was afoot at the Stokely residence given that Detective Gibson saw the marijuana plant "when she first arrived at the residence." Second, the government argues that because Mr. Stokely was permissibly detained, his legal detention does not vitiate his subsequent consent to search and any finding by the magistrate judge that the officers used coercion or a show of force or threats was based on an erroneous interpretation of the facts. Third, the government argues that Mr. Stokely acted voluntarily in consenting to the search, he was not subject to subtle forms of coercion, and the record does not reflect that Mr. Stokely's son was a "young child" or that the treatment of the son created a coercive environment.

The government also requests that the Court conduct an additional suppression hearing to clarify facts relevant to the discovery of the marijuana plant and the circumstances surrounding Mr. Stokely's son. In the alternative, the government requests a *de novo* review and hearing by this Court.

### 1. The Marijuana Plant

The government objects to the magistrate judge's finding that Detective Gibson did not have reasonable suspicion to detain Mr. Stokely, given the discovery of the marijuana plant and the collective knowledge of the officers at the scene of defendant's arrest. The government asserts that the evidence of record indicates that Agent Bobich testified that Detective Gibson saw the marijuana plant "when she first arrived at the residence that day" and therefore, the discovery of the plant, when considered with the other information available, gave Detective Gibson reasonable suspicion and probable cause to detain Mr. Stokely [*see* Doc. 29, p. 8]. The government also requests an additional evidentiary hearing to clarify the exact time at which Detective Gibson first discovered the marijuana plant.

While the government is correct that the Court has discretion to reopen or conduct an additional suppression hearing, the United States Court of Appeals for the Sixth Circuit has stated that "'courts should be extremely reluctant to grant reopenings." *United States v. Carter*, 374 F.3d 399, 405 (6th Cir. 2004) (citations omitted). The party requesting reopening must explain its failure to present the evidence initially and a court must evaluate that explanation and determine if it is both reasonable and adequate to explain why the moving party initially failed to introduce evidence that may have been essential to meeting its burden of proof. *See Carter*, 374 F.3d at 406; *see also United States v. Kithcart*, 218 F.3d 213, 219-20 (3d Cir. 2000). Generally, absent any new evidence or evidence that was unobtainable before the original suppression hearing, or any new issues that became relevant

since the initial hearing, the reopening of a suppression hearing is unwarranted. *See United States v. Watson*, 391 F. Supp. 2d 89, 94-95 (D.D.C. 2005).

In this case, the government has neither explained its failure to present testimony from any of the officers who testified at the hearing regarding when the marijuana plant was discovered, nor has the government stated that this testimony must come from a witness who was unavailable or unobtainable at the time of the hearing. In the R&R, Magistrate Judge Shirley thoroughly reviewed the government's failure to introduce, through any of the witnesses it placed on the stand, evidence regarding the discovery of the marijuana plant. Not only did Judge Shirley point out that Agent Bobich's testimony regarding the marijuana plant was "unclear" and subject to several different meanings, he noted that Detective Gibson never mentioned the marijuana plant at all and, when questioned about her actions upon arriving at the Stokely residence, Detective Gibson only testified that she "[s]at in her car." [Doc. 19, p. 98]. Moreover, when questioned about why she handcuffed Mr. Stokely, Detective Gibson stated only that it was for her "safety and his." [*Id.*, p. 88]. Moreover, the government has not proffered, in their objection, when or how Detective Gibson observed the marijuana plant, only reiterating what was stated at the hearing–that the marijuana plant was discovered, according to Agent Bobich, when Detective Gibson "first arrived at the residence that day." This is the exact same testimony that was unclear at the hearing.[4]

---

[4] In its objection, the government asserts that the magistrate judge erred when he concluded that Detective Gibson saw the marijuana plant after the security sweep [Doc. 29, p. 7]. This Court, however, does not read the R&R to be so limited in its finding. Rather, the magistrate judge found that the record did not reveal whether the plant was discovered before Detective Gibson approached and handcuffed Mr. Stokely or after, while Detective Gibson was waiting for Agent Bobich to arrive

13

For these reasons, the Court hereby overrules the government's first objection and denies the government's request to reopen the suppression hearing or for a *de novo* hearing before this Court.

## 2. Vitiation of Subsequent Consent to Search

The government also objects to the magistrate judge's finding that Mr. Stokely was impermissibly detained and that his illegal detention vitiated his subsequent consent to the search. The government argues that Mr. Stokely was "permissibly detained due to the ongoing investigation into the marijuana in his backyard that was observed prior to his arrival, due to the hotel robbery investigation, and due to the potential for firearms illegally possessed at the residence[.]" [Doc. 29, p. 10]. However, as discussed previously, there was no evidence introduced at the hearing as to when Detective Gibson first discovered or had knowledge of the marijuana plant and this Court declines to accept, from the government's assertion alone, that Detective Gibson had knowledge of this plant before she placed Mr. Stokely in handcuffs. In regard to the other two reasons given by the government, the Court notes, as did the magistrate judge, that these two reasons, while suggestive of criminal activity on the part of *defendant*, are not suggestive as to criminal activity on the part of *Mr. Stokely* [*see* Doc. 27, pp. 30-31].

---

and that some evidence "suggests that the officers did not observe marijuana plants until well after Mr. Stokely was detained." [Doc. 27, p. 32]

Moreover, unlike the case of *United States v. Mendenhall*, 446 U.S. 544 (1980),[5] cited by the government, Judge Shirley found, and this Court agrees, that Mr. Stokely was seized within the meaning of the Fourth Amendment when he was placed in handcuffs upon his arrival at his residence, and the government has not proven that this seizure was pursuant to a reasonable suspicion of criminal activity on the part of Mr. Stokely [Doc. 27, pp. 28-29]. *See Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (discussing the test for a seizure); *see also United States v. Smith*, 594 F.3d 530, 536 (6th Cir. 2010). Because nothing happened in the intervening time between Mr. Stokely's seizure and his consent–besides more of the same conduct on the part of the officers–the Court cannot conclude that Mr. Stokely's subsequent consent was valid and voluntary.

Accordingly, the Court agrees with the comprehensive analysis undertaken by the magistrate judge and hereby overrules the government's second objection in regard to whether Mr. Stokely's subsequent consent was vitiated.

### 3. Coercive Environment

In the third objection, the government argues that Mr. Stokely acted voluntarily in giving his consent to the search, that he was not subject to subtle forms of coercion, and that the record does not reflect that Mr. Stokely's son was "young" or that the son's treatment

---

[5] In *Mendenhall*, the United States Supreme Court found that under the facts of that case, a search of the defendant's person was not preceded by an impermissible seizure of her person, therefore, "it cannot be contended that her apparent consent to the subsequent search was infected by an unlawful detention." *Mendenhall*, 446 U.S. at 558-59. The Supreme Court then proceeded to inquire whether there were any other reason why the search of the defendant was invalid, ultimately concluding that there was not. *Id.* at 559-60. After a review of *Mendenhall*, the Court finds the facts of this case distinguishable.

created a coercive environment.[6] The government asserts that the magistrate judge relied on an erroneous interpretation of the facts and did not examine the facts pertaining to coercion or improper conduct at the time of the officers' request to Mr. Stokely to search the residence. Specifically, the government focuses on the magistrate judge's reference to Mr. Stokely's son as a "young child," a reference the magistrate judge took from Investigator Hill's description of Mr. Stokely's son as a "young boy." [Doc. 27, pp. 41-42]. The government argues there is no evidence of record that Mr. Stokely's son was a "young boy" but rather, that his son is actually a young male.[7] The government also asserts that there was no evidence that Mr. Stokely was concerned about the handcuffing of his son or any evidence that the actions of the officers were unreasonable under the circumstances. Further, the government asserts that at no point during the suppression hearing did any party explore details regarding Mr. Stokely's son and the magistrate judge did not inquire into the son's age or the circumstances of his presence.

As an initial matter, the Court notes that "[i]t is the government's burden, by a preponderance of the evidence, to show through 'clear and positive testimony'" that a defendant's valid and voluntary consent to a search was obtained. *United States v. Worley*, 193 F.3d 380, 385 (6th Cir. 1999) (citations and internal quotes omitted). As such, this

---

[6] To the extent the government is again arguing that Mr. Stokely was legally detained and reasonably handcuffed, the Court does not address this objection further, as this objection has been addressed previously in this Order.

[7] While the government asserts, in its objections, that Mr. Stokely's son is a "young male," this assertion is without citation or reference to any witness or evidence purporting to show his age.

16

Court's inquiry into this matter is focused not on whether the magistrate judge inquired into areas of testimony at the hearing to explore whether Mr. Stokely's consent was valid and voluntary, but whether the government put on clear and positive evidence showing as such.

Further, while the Court agrees that there was no substantial testimony at the hearing indicating that Mr. Stokely was extremely concerned with the handcuffing of his son, the Court disagrees that there was absolutely no evidence in the record that Mr. Stokely's son was a young child. In fact, the *only* evidence this Court has gleaned from the record regarding the age of Mr. Stokely's son is Investigator Hill's description of him as a "young boy" and Mr. Stokely's reference to him as his "son." As such, to the extent the government is requesting an additional hearing to clarify facts pertaining to the age of Mr. Stokely's son, the Court respectfully denies this request because the government has not asserted that this testimony requires a witness who was unavailable or unobtainable at the time of the hearing and the government has not explained its failure to present testimony regarding the age of Mr. Stokely's son or the circumstances surrounding his handcuffing.

In addition, while Judge Shirley found that the handcuffing of Mr. Stokely's son and the initial illegal seizure and detention of Mr. Stokely, in particular, was evidence of coercion, the magistrate judge also pointed to several other factors he found indicative of subtle forms of coercion. Judge Shirley noted that Mr. Stokely was detained for a significant length of time, especially in light of the fact that he was illegally detained and unreasonably handcuffed, that he was subject to unjustified physical force upon his arrival at his residence, that he was inexperienced with the criminal justice system, that as many as five police

17

officers were present on the porch at the time Mr. Stokely signed the consent to search (despite Mr. Stokely's assertion that he was not intimated by the officers), and that Mr. Stokely did not receive *Miranda* warnings but was only notified by the consent-to-search form that the fruits of the search could be used as evidence.

As noted by the magistrate judge, "the fact of custody alone has never been enough in itself to demonstrate a coerced . . . consent to search," *United States v. Crowder*, 62 F.3d 782, 787 (6th Cir. 1995), and a number of other factors can lead to a finding of voluntary consent, including "the absence of any overt act or threat of force . . . the absence of any promises to the defendant or any indication of 'more subtle forms of coercion that might flaw his judgment'; the defendant's giving his post-arrest consent on a public street and not in the confines of the police station; the absence of any indication that the defendant was a 'newcomer to the law, mentally deficient, or unable in the face of custodial arrest to exercise a free choice'; and the defendant's receiving Miranda warnings and notification that the results of the search could be used against him." *Crowder*, 62 F.3d at 787 (quoting *United States v. Watson*, 423 U.S. 411, 424-25 (1976)).

Based upon the Court's own review of the evidence Judge Shirley found to be indicative of subtle forms of coercion, the testimony at the hearing, the relevant law, and after thoroughly considering the government's objections, the Court is in agreement with the magistrate judge that the circumstances of Mr. Stokely's detention indicate subtle forms of coercion that rendered Mr. Stokely's consent invalid and not voluntary.

Accordingly, the Court hereby overrules the government's third objection.

## III. Conclusion

For the reasons above, the Court **OVERRULES** the government's objections [Doc. 29] to Magistrate Judge Shirley's Report and Recommendation. The Court **ACCEPTS IN WHOLE** the Report and Recommendation [Doc. 27]. Defendant's Motion to Suppress Evidence [Doc. 14] is hereby **GRANTED**.

IT IS SO ORDERED *NUNC PRO TUNC* July 16, 2010.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE
